UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CARLOS HERNANDEZ and ENRIQUE
MALDONADO on behalf of themselves and others
similarly situated,

                Plaintiffs,

      -against-

BHUPINDER SIKKA, SANJAY GOYAL, MANMEET
SIKKA, MADHU GOYAL, SHRI GURU OM INC.
d/b/a Mint, NISARG SONI, and JOYAL GONSALVES,

                Defendants.
------------------------------------------------------------------X

**FILED**
**CLERK**

3/6/2020 10:55 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
17-CV-4792 (SJF)(SIL)

FEUERSTEIN, District Judge:

Plaintiffs Carlos Hernandez ("Hernandez")[1] and Enrique Maldonado ("Maldonado")

(collectively "Plaintiffs") commenced this action against defendants[2] Bhupinder Sikka ("Gary"),

Sanjay Goyal ("Goyal"), Manmeet Sikka, ("Rubal"), Madhu Goyal ("Madhu Goyal"), Shri Guru

Om Inc. d/b/a Mint ("Mint"), Nisarg Soni ("Soni") and Joyal Gonsalves ("Joyal") (collectively

"Defendants") seeking, *inter alia,* unpaid wages for overtime worked pursuant to the Fair Labor

Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.* and New York Labor Law

("NYLL").   Currently before the Court are the parties' cross-motions for summary judgment.

*See* Plaintiffs' Motion, Docket Entry ("DE") [33]; Defendants' Motion, DE [32].   For the

---

[1]Hernandez is periodically referenced in documents and depositions as "Francis."  Similarly, most of the individual defendants are consistently referenced within documents and depositions by first names other than those used in the caption.  The Court defines most of the individual defendants by their informal names to conform with the testimonial evidence.

[2] After the briefing on the motions was completed, Plaintiffs' motion for leave to amend the complaint was granted by Magistrate Judge Steven I. Locke.  *See* Memorandum & Order, Docket Entry ("DE") [44]. Plaintiffs were permitted, with Defendants' consent, to substitute proper parties, which amendment is reflected in the caption, above.  The order also granted Plaintiffs' request, over Defendants' objection, to add defendant Manmeet Sikka.

reasons set forth below, Defendants' motion is granted, and Plaintiffs' motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual History[3]

<u>1. The Parties</u>

Corporate Defendant Shri Guru Om Inc. does business as Mint, a restaurant in Garden City, New York, that opened in 2011 and has annual volume of sales in excess of $500,000. Defendant Goyal, an endocrinologist with an active practice in Baldwin, New York, is a 50% owner of Mint; Madhu Goyal is his wife. The other owner is Defendant Rubal Sikka. The parties dispute whether Rubal's father, Gary Sikka, also maintains an ownership interest in Mint. Defendant Joyal Gonsalves, sometimes referred to as "Joel," is one of two chefs at Mint. Defendant Soni, sometimes referred to as "Sonny," is a manager who primarily supervises waitstaff and the front of the house, but interacts with kitchen staff as well.

Plaintiffs Hernandez and Maldonado worked as dishwashers and/or food preparers at Mint. Hernandez was hired in 2012 and worked at Mint from 2012 until 2017. Maldonado worked there briefly in 2012 and again from 2014 to December 2017. Both Hernandez and

---

[3] The facts are undisputed unless otherwise noted and are drawn from: (1) the parties' Local Civil Rule 56.1 Statements of Undisputed Facts and Responses relating to Plaintiffs' motion, *see* Plaintiff's Rule 56.1 Statement, DE [33-28]; Defendants' Response and Counterstatement to Plaintiff's Rule 56.1 Statement, DE [38-23]; (2) the parties' Local Civil Rule 56.1 Statements of Undisputed Facts and Responses relating to Defendants' motion, *see* Defendants' Rule 56.1 Statement, DE [32-9]; Plaintiff's Response and Counterstatement to Defendants' Rule 56.1 Statement, DE [32-26]; (3) attorney declarations of Marcus Monteiro in Support of Plaintiffs' Motion ("Monteiro Decl."), DE [33-1] and of Desiree M. Gargano in Support of Defendants' Motion ("Gargano Decl."), DE [32-1];and (4) deposition testimony, *see* Deposition of Carlos Hernandez ("Hernandez Dep."), Monteiro Decl. Ex. 5, Deposition of Enrique Maldonado ("Maldonado Dep."), Monteiro Decl. Ex. 7; Deposition of Sanjay Goyal ("Goyal Dep."), Monteiro Decl. Ex. 23; Deposition of Bhupinder "Gary" Sikka ("Gary Dep."), Monteiro Decl. Ex. 22; Deposition of Manmeet "Rubal" Sikka ("Rubal Dep."), Monteiro Decl. Ex. 20; Deposition of Joyal Gonsalves ("Joyal Dep."), Monteiro Decl. Ex. 9; and Deposition of Nisarg Soni ("Soni Dep."), Monteiro Decl. Ex. 8.

Maldonado were non-exempt employees within the meaning of the FLSA and NYLL.  It is undisputed that Plaintiffs were paid weekly in cash.

     2.  Mint's Operations and Procedures

     Mint is open for business Sunday through Thursday from 11:30 a.m. to 10:30 p.m., and from 11:30 a.m. to 11:30 p.m. on Friday and Saturday.  Rubal Dep. at 72.  On Fridays and Saturdays, the last order is taken at 10:00 or 10:30 p.m., and the kitchen closes at 11:00 or 11:30 p.m.  Soni Dep. at 14-15, 22.   In addition to the main restaurant, there is a second floor/rooftop "Skybar" and lounge open mainly on weekends and in good weather.  *See* Soni Dep. at 24. There is some dispute about what time the Skybar closes.  Soni thought it was open the same hours of the restaurant, *see* Soni Dep at 24, whereas Rubal said private events could go to 1:00 or 2:00 a.m., and that there could be "a couple of events" that went to 4:00 a.m.  Rubal Dep. at 74-75, 86.  There is a separate kitchen upstairs, but there is no testimony about how this facility is utilized or whether it was staffed by regular Mint employees or by workers supplied by outside vendors.  Mint employs seven to ten employees during the busy season, and three to four during the slow season (December through the end of May), plus some bus service and bartenders provided by a service.   There is a vendor who brings in more staff and Rubal pays the vendor.

     Mint uses an iPad with a timekeeping application to track employee work hours.  There is a station by the front door of the restaurant, Time Station 1; at some point, there was a second location by the kitchen, Time Station 2, but it no longer exists.  Each employee has an ID card that he displays to the screen to log in and out.  Defendants state that the system was in place from 2012 forward, *see* Rubal Dep. at 133-34, while Plaintiffs claim that they did not start clocking in until 2014.  Hernandez Dep. at 30.  The timekeeping system has an "auto checkout" of 12:45 a.m., but if an employee checks out later, the later time is reflected.  Rubal Dep. at 278.

### 3.  Plaintiffs' Employment

Hernandez began working at Mint in 2012.  Although the month he started work is not clear from the evidence submitted, his damages calculation uses a start date of July 1, 2012.  *See* Plaintiffs' Damages Calculation ("Pls' Damages Calc."), Monteiro Decl. Ex. 24.  Defendants do not present any evidence regarding when Hernandez began work.  He was hired by Joyal as a dishwasher; Plaintiffs dispute whether the hiring decision was made solely by Joyal or whether it was made at the direction of, or with the participation of, other Defendants.  Hernandez did not receive any documents at hiring.  He started the day he was hired, and was told by Joyal that he would be paid $375 a week.  He worked Tuesday to Sunday from 11:00 a.m. to 11:00 p.m. with two hours of break time.  Aside from his day off, Hernandez testified that he never missed a scheduled day at work, arrived everyday at 11:00 a.m. or once a month at 12:00 p.m, and finished work at 11:00 p.m., never before.  While his hours did not change, his weekly pay rate increased to $425 in 2013, $450 in 2014, and $525 in 2016.

Hernandez did not track his own hours and had difficulty remembering to use the clock in/out procedure on a regular basis.  Sometimes he would punch in two or three hours late or forget to clock out, or he would forget his card and Rubal had to clock him in and out.  At some point, he was given a number to use instead of the card, and later a phone application that allowed him to clock in and out by phone.  Rubal testified that Hernandez "just wouldn't clock in."  Rubal Dep. at 63-64; *see also* Hernandez Dep at 28-34 (acknowledging that he would forget to clock in and out, and would forget to use the phone app).  On pay day, Hernandez would indicate the days and times for which he had been at work but not clocked in or out and, according to Rubal, he would get paid for that time.  Rubal Dep at 196-97; Hernandez Dep. at

34; *see also* Joyal Dep. at 93 (Rubal would check with Joyal to see if Plaintiffs worked on days they forgot to clock in).

Maldonado first started to work at Mint as a dishwasher towards the middle of the year in 2012.  He left Mint in 2012 and worked at a different restaurant for two years, returning to Mint in the middle of 2014, and worked there until December 2017.  Maldonado seeks damages only from his second stint at Mint, starting on May 1, 2014.  *See* Pls' Damages Calc.  He was hired by Joyal and spoke to no one else, but Plaintiffs again dispute whether Joyal was the lone decisionmaker on his hiring.  Maldonado had Monday off. He worked on Tuesdays from 11:00 a.m. until 12:00 a.m Wednesday, with a break.  On the remaining days, he arrived for work at 2:00 p.m. if there was no party scheduled, and 3:00 p.m. if there was a party.  On Wednesday, he worked until 1:00 a.m. on Thursday; on Thursday, until 2:00 a.m. on Friday; and on Friday, until 3:00 a.m. on Saturday.  He had no breaks on Wednesday, Thursday, or Friday.  Maldonado testified that he worked until 4:00 a.m. Fridays and Saturdays when there were events scheduled, and that there were three parties every weekend.  He never made less than $450 per week; in 2015, his pay was increased to $500 per week.

Maldonado clocked in using his card, but often did not clock out because the machine was turned off.  He did not testify regarding any time off that he took, or that he took no time off.  Joyal testified that Maldonado drank on the job, and "sometimes he would not show up in the morning," Joyal Dep. at 85-86; *see also id.* (Maldonado "gets drunk and he just leaves"), and that he was a no show at least once a week, showing up late or not at all, and once or twice a month he would leave early at 8:00 or 8:30 p.m.  *Id.* at 97-98.

4. Payroll Records, Documents

The record includes three types of documents pertaining to timekeeping and payroll: (1) a computer generated list with "punch in" and "punch out" out times by day with the total hours worked, which are rounded out in some unspecified manner (the "Time Records"), Monteiro Decl. Ex. 10 (for Hernandez); (2) computer generated lists with clock in and clock out times only (the "Time Clock Data"), *id.* Exs. 11 (for Hernandez), 12 (for Maldonado); and (3) handwritten grids consisting of columns for, *inter alia,* designated work week, hours worked per day, gross earnings for both salary and overtime, and the amount paid in cash (the "Payroll Sheet"). *Id.* Exs. 13 (for Hernandez), 14 (for Maldonado).   The Payroll Sheets have preprinted column names that do not in all instances pertain to the data contained in the columns.  For example, the work week data is contained in a column headed "Employee Name" and the "Other wages" column under "Gross Earnings" appears to contain a signed acknowledgement by the employee. Plaintiffs were paid in cash and were not given wage statements. *See* Rubal Dep. at 250 (rate and hours were marked on the Payroll Sheet, but Plaintiffs were not given pay stubs).

The Time Records, Time Clock Data, and Payroll Sheet for Hernandez, identified therein as "Francis," cover the time period from January 27, 2014 through February 19, 2017.  There is a gap from June 30, 2014 through August 14, 2014 missing from all the records. There are no records for the time period of July 1, 2012 through January 26, 2014 or for February 20, 2017 through March 16, 2017.

As to Maldonado, there are no Time Records, but his Time Clock Data starts on April 27, 2016 and ends February 26, 2017.  His Payroll Sheet, however, starts later on September 5, 2016 and runs through February 26, 2017.  There are no time records for the time period from the

beginning of his employment, May 1, 2014 through April 26, 2016, or the end, February 27, 2017 through May 23, 2017.

There are discrepancies between the hours recorded on the Time Records and Time Clock Data and the hours for which pay was given as set forth on the Payroll Sheets.  Rubal claims this is not a "negative discrepancy" and only reflects an increase where the employee "was not on the clock and still getting paid on the sheet."  Rubal Dep. at 196-97.  In addition, although the Time Clock Data recorded time by the minute, the Time Records and the Payroll Sheets are rounded to whole hours in some manner.

Neither Plaintiff received a wage notice at the time of hiring.  Hernandez received two wage notices during his employment dated January 6, 2014 and January 18, 2015, and Maldonado received one dated April 28, 2016.  Monteiro Decl. Ex. 15.  Rubal acknowledged that these were the only wage notices given to Plaintiffs.  Rubal Dep. at 132-33.  Neither Plaintiff reads English, and the forms are written in English and Hindi. The signature lines are preceded by an Acknowledgement that reads as follows: "On this day, I received notice of my pay rate, overtime rate if eligible, allowances, and designated payday in English and my primary language.  I told my employer that my primary language is Hindi."

**B.  Procedural History**

Following completion of briefing on the motions, Plaintiffs' moved to amend to, *inter alia,* include proper party names by (1) substituting Shri Guru Om Inc. for defendant ABC Corp., (2) changing the name of defendant Gary Sikka to Bhupinder Sikka; (3) substituting Nisarg Soni for defendant John Doe s/h/a "Sonny"; and (4) substituting Joyal Gonsalves for defendant John Doe No. 2 s/h/a "Joel."  They also sought to add Manmeet ["Rubal"] Sikka as a named defendants.  Plaintiffs' motion was granted by the Magistrate Judge.

In their Amended Complaint, Plaintiffs assert claims for failure to pay overtime wages under the FLSA and NYLL, as well as NYLL claims for failure to (a) pay minimum wages; (b) pay spread of hours pay; (c) provide wage notices; (d) provide wage statements; and (e) maintain records. They also allege claims of conversion and unjust enrichment under state law. The Amended Complaint purports to be brought as both a collective action under the FLSA and a Rule 23 Class, despite the denial of Plaintiffs' prior motion for conditional certification of the FLSA collective action. *See* Order, DE [19]. No motion for class certification has been filed.

## II.  LEGAL STANDARDS

### A. Summary Judgment

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting FED. R. CIV. P. 56(a)).   In deciding a motion for summary judgment, "the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996))).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If

the moving party satisfies its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). All facts under consideration must be directly supported by admissible evidence. *See* Fed. R. Civ. P. 56(c).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts" but rather "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original) (internal quotation marks omitted); *see also Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact" (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has failed to make a sufficient showing on an essential element for which it bears the burden of proof).

## B.  FLSA and NYLL

The FLSA and the NYLL require employers to pay covered employees who work more than forty (40) hours in a work week at a rate for those excess hours of at least one-half times their regular rate of pay.  29 U.S.C. §207(a)(1); N.Y. Comp. Code R. & Regs. tit. 12, § 142-2.2. To establish a claim for unpaid overtime under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 2d 1515 (1946)).  "When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records." *Anderson,* 328 U.S. at 686-687.  It is the responsibility of the employer, not the employee to maintain time records, *see* 29 U.S.C. §211(c); N.Y. LAB. LAW §§ 196-a, 195(4), and that duty "to maintain accurate records of its employees' hours is non-delegable."  *Kuebel,* 643 F.3d at 353.

On summary judgment "[w]hen an employer does not meet these recordkeeping requirements, or otherwise fails to preserve accurate or adequate records, the employee's burden of proof lessens to 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Pierre v. Hajar, Inc.*, No. 15CV02772, 2018 WL 2393158, at *3 (E.D.N.Y. Mar. 28, 2018) (quoting *Anderson,* 328 U.S. at 687). The "employee's burden in this regard is not high." *Kuebel,* 643 F.3d at 362; *see also Aponte v. Modern Furniture Mfg. Co.,* No. 14-CV-4813, 2016 WL 5372799, at *10 (E.D.N.Y. Sept. 26, 2016) (characterizing the employee's burden as a "relaxed standard"). "It is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel,* 643 F.3d at 362; *see also Aponte,* 2016 WL 5372799, at *12 ("a general estimate based on an employee's recollection gives rise to a just and reasonable inference of uncompensated work sufficient to shift the burden onto the employer").

To counter the employee's estimates, "[t]he employer then must 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Lanzetta v. Florio's Enters., Inc.,* 763 F. Supp. 2d 615, 618 (S.D.N.Y. 2011) (quoting *Anderson,* 328 U.S. at 688); *see also Kuebel,* 643 F.3d at 362 (noting that where the employee satisfies the initial burden, "[t]he burden then shifts to the employer"). "In effect, in the absence of employer records, the employee's testimony assumes a 'rebuttable presumption of accuracy.'" *Garcia v. Vill. Red Rest. Corp.,* 15 Civ. 6292, 2017 WL 3493148, at *1 (S.D.N.Y. Aug. 14, 2017) (quoting *Goett v. VI Jets Int'l, Inc.,* No. 14 Civ. 8256, 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015)). A plaintiff's entitlement to a reasonable inference may be rebutted where the plaintiff's attestations are inconsistent with the facts and/or contradicted by the testimony of other

witnesses. *See id.* at *2. In the absence of evidence from the employer of the exact amount of work performed or evidence to negate the reasonableness of any inference to be drawn from the employee's evidence, "the court may then award damages to the employee, even though the result be only approximate." *Kuebel,* 643 F.3d at 362 (quoting *Anderson,* 328 U.S. 687-88).

## III.  DISCUSSION

### A. Unpaid Wages and Overtime

Plaintiffs seek unpaid wages and overtime earned over the course of their respective employments at Mint. Hernandez seeks payment for the time period of July 1, 2012 to March 16, 2017, and Maldonado for the period from May 1, 2014 to May 23, 2017.[4] It is undisputed that there are time periods for which Defendants maintained no time records, and time periods where some records were maintained. The Court addresses these time periods separately for each Plaintiff.

    1.  <u>Time Periods with No Employer Time Records</u>

       *a.  Hernandez*

Hernandez seeks payment of unpaid wages and overtime earned for the time period of July 1, 2012 to March 16, 2017. Defendants maintained some time records for part of Hernandez's employment, but did not maintain any time records for three time periods: (1) from July 1, 2012 through January 26, 2014; (2) from June 30, 2014 through August 14, 2014; and (3) from February 20, 2017 through March 16, 2017.

Hernandez consistently testified that he worked six days a week from 11:00 a.m. to 11:00 p.m. with two hours of break time and never missed a scheduled work day. Defendants have not

---

[4]Although Maldonado claims to have worked briefly for Mint in 2012, he appears to be seeking unpaid wages and overtime only from the time of his return in 2014 forward.

produced any evidence to negate Hernandez's recollection of his work hours; to the contrary, the testimony adduced is consistent with Hernandez's.  The restaurant opened at 11:30 a.m. and closed anywhere from 10:00 to 11:30 p.m. depending on how busy it was.  *See* Rubal Dep. at 72 (hours were 11:30 a.m. to 11:30 p.m. depending on day of the week); Soni Dep. at 14-15 (last order on weekends is at 10:00 or 10:30 p.m.).  Witnesses essentially confirmed both Hernandez's asserted start time of 11:00 a..m., *see* Joyal Dep at 37-38 (dishwashers arrive at 11:00, 11:15 a.m. and assist in preparation for lunch buffet); Soni Dep. at 42-43 (Soni clocks in at 11:30 a.m. and Hernandez was already there), and his departure time.  *See* Joyal Dep. at 48 (there is always a dishwasher there until 11:00 p.m.).  There is no testimony of absenteeism to rebut Hernandez's claim that he did not miss any scheduled work days.

Defendants have failed to offer any evidence of the amount of work Hernandez performed for the time periods from July 1, 2012 through January 26, 2014, from June 30, 2014 through August 14, 2014; and from February 20, 2017 through March 16, 2017, nor have they offered any evidence to negate the reasonableness of the inference to be drawn from Hernandez's testimony.  Hernandez's motion for summary judgment as to these time periods is granted, and he is deemed to have worked from 11:00 a.m. to 11:00 p.m,, 10 hours per day excluding breaks, six days per week, or 60 hours per week during these intervals.

### a.  *Maldonado*

Maldonado seeks unpaid wages and overtime for the period from May 1, 2014 to May 23, 2017.  There are no time records at all concerning Maldonado for two time periods: (1) from May 1, 2014 to April 26, 2016; and (2) from February 27, 2017 through May 23, 2017.

Unlike Hernandez, Maldonado has not testified that he worked every day he was scheduled to work. Absent this testimony, the Court cannot draw the inference that he did,

indeed, work six days each and every week.  In addition, Defendants have adduced evidence that raises a question about Maldonado's reliability.  *See, e.g.,* Joyal Dep. at 96-98 (Maldonado failed to show for work at least once a week and once or twice a month he would leave early at 8:00 or 8:30).

Maldonado's testimony regarding the hours worked on days he did show up is also inconsistent with the testimony of defense witnesses.  He testified to working a different schedule than that worked by Hernandez, arriving at 11:00 a.m. only on Tuesdays, and arriving at either 2:00 or 3:00 p.m. on the remaining five workdays, and working until at least 1:00 a.m. the following day, and on weekends, until 2:00, 3:00 or even 4:00 a.m.  Maldonado also testified that the restaurant closed at 12:00 or 1:00 a.m. nightly during the week.  Maldonado Dep. at 23. This testimony is inconsistent with his own testimony regarding the closing time of the restaurant as well as with other testimony that the kitchen closed at 11:00 or 11:30 p.m., *see, e.g.,* Soni Dep. at 22; Rubal Dep. at 192, and that the chefs left as well.  *See* Joyal Dep. at 47.   Although far from clear from his testimony, Maldonado may be suggesting that he was working at the events that were held occasionally in the restaurant or, seasonally and in good weather, at the rooftop lounge.  While Maldonado testified that there were three parties every weekend, Maldonado Dep. at 28, there is contrary testimony presented regarding the frequency and duration of these events.  *See* Joyal Dep. at 56 (there are one or two big parties a month on weekends); Soni Dep. at 24 (rooftop open mostly on weekends and in good weather).

On this record, the Court is unable to draw a reasonable inference about the hours worked by Maldonado from May 1, 2014 to April 26, 2016 and from February 27, 2017 through May 23, 2017, despite Defendants' failure to maintain time records for this time period.  Material issues of fact remain regarding the work performed during these time periods that should be addressed

by a jury and accordingly, Maldonado's motion for summary judgment for unpaid wages and overtime is denied.

2.   Time Periods with Employer Time Records

Defendants have produced various time records for the remaining time periods of employment for Hernandez (from January 27, 2014 through June 29, 2014 and from August 15, 2014 through February 19, 2017), and for Maldonado (from April 27, 2016 to February 26, 2017).  Plaintiffs challenge the accuracy of these records, citing, *inter alia,* the inaccuracy of the Time Records/Time Clock Data in light of Plaintiffs' admitted failure to consistently clock in or out, discrepancies between the Time Records/Time Clock Data and the Payroll Sheets, and the failure to account for time worked for partial hours.  They urge that the time records be invalidated in full and that the Court use the Plaintiffs' approximate recollections of time worked to calculate the amount of unpaid wages and overtime.

The parties agree that the clock in/out procedures were not correctly used as designed, whether by Plaintiffs' failure or by unavailability of the clock mechanism.  As a result, the Time Records/Time Clock Data does not necessarily reflect all the hours worked on a given day. Notwithstanding Plaintiffs' lack of diligence regarding clocking in and out, the burden remains on Defendants to maintain accurate records. *See Kuebel,* 643 F.3d at 363 ("once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours"). Defendants explain the discrepancies between the Time Records/Time Clock Data and the Payroll sheets as reflecting upwards manual adjustments necessitated by Plaintiffs' failures to reliably clock in and out of work.   The issue presented is whether Defendants met their burden

15

of maintaining accurate records through the practice of adjusting the Plaintiffs' clocked time and recording it on the Payroll Sheets.

The employer provided a method of maintaining time records, and, faced with employees who repeatedly failed to utilize the process correctly, attempted to manually correct those hours to create an accurate record. Plaintiffs have not cited any case law suggesting that Defendants' practice is insufficient as a matter of law.  The Defendants' degree of success in implementing this procedure, however, is the question left unresolved.  Plaintiffs have testified about the hours worked, and Defendants have rebutted that testimony by producing records including the Payroll Sheets.  Resolving the differences between the two requires an assessment of the credibility of witnesses and determination of facts that cannot be resolved on summary judgment.

## B. Spread of Hours Pay

NYLL requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  Plaintiffs seek summary judgment on this claim while Defendants do not expressly address it in their opposition papers.

As determined above, Hernandez is entitled to summary judgment on his unpaid wages and overtime claims for the time periods of July 1, 2012 through January 26, 2014, from June 30, 2014 through August 14, 2014; and from February 20, 2017 through March 16, 2017, for which dates he has been deemed to have worked ten hours per day over a twelve-hour time period. Summary judgment is also granted to him for spread of hours pay for these dates, with the calculation of such damages deferred.  Plaintiffs' motion for summary is denied as to

Hernandez's hours worked for the remaining time periods as well as to Maldonado's hours throughout his employment as there remain upon questions to be determined at trial.

## C.  NYLL Notice and Recordkeeping Claims

NYLL sets notice and record-keeping requirements for employers, requiring that wage notices be given at the time of hiring, and wage statements be given each time an employee is paid.  Plaintiffs seek recovery of statutory damages under NYLL for violation of these provisions.

### 1.  Wage Notices

NYLL requires an employer to provide each employee, at the time of hiring, with a notice containing specific information including, *inter alia,* the rate or rates of pay and basis thereof, whether paid by the hour, day, or week, and the regular pay day.  N.Y. LAB. LAW § 195(1)(a).  In addition, the employer is required to provide the notice "in writing in English and in the language identified by each employee as the primary language of such employee."  *Id.*

If the notice is not provided to the employee within ten business days of the first day of employment, the employee may recover civil damages. At the time Plaintiffs were hired, NYLL § 198(1-b) allowed for a recovery of fifty dollars for each work week to a maximum of $2,500. Effective February 26, 2015, the section was amended to increase the amount to "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. LAB. LAW § 198(1-b).

Defendants failed to comply with the wage notice requirements under New York law. Hernandez started work on July 1, 2012 and received a wage notice on January 6, 2014, approximately 79 weeks after his employment began.  Maldonado started work on May 1, 2014 and received a wage notice on April 28, 2016, approximately 104 weeks late. Moreover, in

further noncompliance, the late notices were in English and in Hindi, not in Spanish.  Plaintiffs'

motion for summary judgment on this claim is granted.

   2.   Wage Statements

   Under the NYLL, an employer is required to provide each employee with a written

statement with each payment of wages setting forth the following information:

> the dates of work covered by that payment of wages; name of
> employee; name of employer; address and phone number of
> employer; rate or rates of pay and basis thereof, whether paid by the
> hour, shift, day, week, salary, piece, commission, or other; gross
> wages; deductions; allowances, if any, claimed as part of the
> minimum wage; and net wages.

N.Y. LAB. LAW § 195(3).  In addition, statements provided to non-exempt employees must also

include "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of

regular hours worked, and the number of overtime hours worked."  *Id.*  Prior to February 26,

2015, an aggrieved employee could recover $100 for each work week that the violation occurred,

not to exceed $2,500. Effective February 27, 2015, the amount of recoverable damages increased

to $250 per work day that the violations occurred or continue to occur, with a maximum award

of $5,000, with costs and reasonable attorneys' fees. N.Y. LAB. LAW § 198(1-d); *see also Ayala*

*v. Looks Great Servs., Inc.,* No. 14CV6035, 2016 WL 3541548, at *3 (E.D.N.Y. June 23, 2016)

(discussing change to statutory damages amounts).

   Defendants note that Plaintiffs signed the Payroll Sheets weekly that were shown to them,

but do not expressly argue that signing a piece of paper displaying some of the required

information satisfies the employer's statutory obligation to furnish an employee with a wage

statement.  Instead, they contend that since Plaintiffs challenge the accuracy of the Payroll Sheet

data, they are attempting to "obtain double recovery for unpaid wages and allegedly inaccurate

statements."  Defendants' Memorandum in  Opp. at 14, DE [38-24].  The wage statement

requirement of NYLL 195(3) is not, as Defendants suggest "an additional remedy for a substantive violation" for failure to pay wages, *see id.,* but rather a separate statutory requirement, the violation of which exposes the employer to civil damages independent of any unpaid wages claim.

Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3) and summary judgment on this claim is granted in Plaintiffs' favor.

### D.  Liability of Individual Defendants

Plaintiffs have moved for summary judgment on the issue of whether Mint, Rubal, and Gary were their employers within the meaning of the FLSA.  In opposition, Defendants concede that Mint was an employer, and they have cross-moved as to whether Gary, Sanjay Goyal, and Sanjay's wife, Madhu Goyal, are "employers." within the meaning of the FLSA.

Only an employer may be held liable for violations of the FLSA.  *See* 29 U.S.C. § 207(a)(1).  An "employer" under the FLSA is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and may include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).   The Second Circuit instructs that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Goldberg v. Whitaker House Co-op., Inc*., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)). Employment for FLSA purposes is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Barfield v. New York City Health & Hosps. Corp*., 537 F.3d 132, 141 (2d Cir. 2008). The Second Circuit has identified several sets of relevant factors to be used in

analyzing various employment situations.  The "traditional four-factor test," *Barfield,* 537 F.3d at 144, examines the degree of control exercised over the worker, asking "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 142 (quoting *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984)).[5]  No one factor is conclusive, and "[s]ince economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."  *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (emphasis in original); *see also Teri v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013) (the court "should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship").

"The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers."  *Irizarry*, 722 F.3d at 104 (2d Cir. 2013).  Where the worker is employed by a corporation, individual officers or directors may also be "deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions."  *Berrios v. Nicholas Zito Racing Stable, Inc*., 849 F. Supp. 2d 372, 394 (E.D.N.Y. 2012) (internal quotation marks and citation omitted) (denying summary judgment, finding that a reasonable juror could find the corporate president individually liable where he was sole shareholder with the power to hire and

---

[5] The Second Circuit has identified additional factors to assist in determining whether an individual was an employee or an independent contractor, or whether there was functional control over an individual's work.  *See Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir. 2003); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d Cir. 1988).  Those factors are inapplicable here given the allegations and evidence in this case.

fire, approved "every check cut" and had daily interactions regarding the business).  When assessing whether an individual within a company is personally liable as an "employer," the Second Circuit applies the *Barfield/Carter* factors, "looks to the totality of the circumstances, and also considers the putative employer's level of 'operational control.'"  *Sethi v. Narod*, 974 F. Supp. 2d 162, 186 (E.D.N.Y. 2013) (citing *Irizarry,* 722 F.3d at 105-17).  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Irizarry,* 722 F.3d at 110.  "Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees."  *Id.* at 111.  While the FLSA and NYLL definitions of employer are "nearly identical," *see Teri,* 980 F. Supp. 2d at 375, the New York test "focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting *Velu v. Velocity Express, Inc.*, 666 F.Supp.2d 300, 307 (E.D.N.Y. 2009).

1.   Defendant Madhu Goyal

Regarding Madhu, Plaintiffs have demonstrated their intent to dismiss her from this action, both in their motion to amend and, most recently, in their opposition to Defendants' motion. *See* Plaintiffs' Mem. in Opp. at 9, DE [32-27].  Accordingly, the claims against Madhu Goyal are dismissed.[6]

---

[6] In their Reply papers, Defendants note that despite Plaintiffs' stated intention to drop their claims against Madhu, Plaintiffs' counsel refused to execute a stipulation of dismissal, thus necessitating Defendants' motion to dismiss her from the case.  While Defendants suggest that this conduct may be sanctionable pursuant to Rule 11 of the Federal Rules of Civil Procedure, they have not moved for such relief, and the Court declines to address their suggestion in the context of the current motion.

2.  <u>Defendant Manmeet "Rubal" Sikka</u>

Plaintiffs have moved for summary judgment on the issue of Rubal's status as an employer.  At the time this motion was filed, however, he was not a party to this action.  Thus, Plaintiffs' request was premature and it is denied as such.

Discussion of the facts concerning Rubal's supervisory authority and conduct is offered as context for the discussion as to whether Goyal and/or Gary are employers under the FLSA. There is ample testimony that Rubal, who was added as a party after this motion was filed, ran the restaurant on a day to day basis.[7]  In a declaration submitted in opposition to the conditional certification motion, Rubal stated, *inter alia,* that he is an owner of Mint, and as such is "responsible for overseeing the day to day operations of the business, including the review of employees' hours and ensuring that each employee that works is paid for all hours worked and in full compliance with the law."  Declaration of Manmeet (Rubal) Sikka, ¶2, Monteiro Decl. Ex. 18; *see also* Goyal Dep. at 16 (Rubal was the working partner responsible for "all day-to-day activities and management of the restaurant").  Various deponents consistently testified that Rubal acted with the various indicia of control.  *See, e.g.,* Soni Dep. at 18-19 (Rubal is in charge of hiring, firing, setting schedules and rates of pay); Goyal Dep. at 16 (Rubal is the working partner responsible for "all day-to-day activities and management of the restaurant"); Joyal Dep. at 12-13, 54 (Rubal is the boss and does all the scheduling); Maldonado Dep. at 32 (Maldonado asked Rubal for a wage increase).  Regardless of this evidence regarding Rubal's role, however, more than one person may be an employer under the FLSA.

---

[7]Plaintiffs' motion regarding Rubal's status as an employer is denied for essentially procedural reasons. Given the evidence, including Rubal's own declaration cited below, the parties should, prior to trial, consider whether a stipulation regarding his role as an employer is appropriate.

3.  Defendant Sanjay Goyal

It is undisputed that Sanjay Goyal is an owner of Mint and that he is an officer of the corporation.  Beyond the mere fact of his ownership interest, however, the record lacks sufficient evidence of operational control by which a reasonable jury could find he was an employer within the meaning of the FLSA.

In reference to the four *Carter* elements, the record suggests that Sanjay had the power to exercise some authority over employees.  Specifically, he conceded that hypothetically, he *could* hire or fire employees, but there is no evidence that he actually *did* exercise this authority at any point.  For example, when asked if he could fire someone, he responded "I guess I can, I'm the president." *Id.* at 51.  In addition, he testified that he has check signing authority, although he does not think he has ever signed any checks, *see* Sanjay Dep. at 24, and there is no evidence to refute his belief.

The fact that an individual has the unexercised authority to control aspects of employment may weigh in favor of a finding that the individual is an employer.  *See Irizarry,* 722 F.3d at 116*; Herman,* 172 F.3d at 140.  Here, this unexercised authority is the *only* evidence that suggests Sanjay was an employer.  There is no evidence that Sanjay had any input whatsoever on issues including pay rate or method of payment, that he maintained any records of employment or that he supervised or controlled employee work schedules or work conditions. The uncontroverted evidence is that Sanjay was physically present at Mint three or four times a week, but only to have his meals. There is no evidence of any other conduct by Sanjay during his visits that would support a finding that he was controlling the work of the employees.  Plaintiffs themselves have not testified that Sanjay directed their work in any manner.  To the contrary, Maldonado testified that he did not know Sanjay, *see* Maldonado Dep. at 11, and Hernandez

23

testified that Sanjay was at Mint on weekends, but that Hernandez had not "really spoken with him," and that Sanjay did not ever tell him what to do while at work.  Hernandez Dep. at 120; *see also* Joyal Dep. at 28 (Sanjay is an owner, but does not tell Joyal what to do, nor does Joyal believe that Sanjay has the power to tell him what to do); Gary Dep. at 25 (testifying that Sanjay did not work at Mint but is a co-owner with Rubal).

Viewing the totality of the circumstances, the fact of Sanjay's unexercised authority alone, considered in the context of the lack of any evidence of operational control by Sanjay, cannot support a finding that he was an "employer."  Plaintiffs' motion for summary judgment is denied, Defendants' motion for summary judgment is granted, and the case is dismissed as against Sanjay Goyal.

4.  Defendant Bhupinder "Gary" Sikka

Plaintiffs argue that Gary, Rubal's father and the conceded owner and operator of a separate restaurant in New York City ("Mint NYC"), is also an owner of Mint on Long Island. They point to various publications issued around the time of Mint's opening that identify Gary as an owner.  In addition, Gary was the guarantor of the lease for Mint.  Gary Dep. at 86.  Plaintiffs do not state that they were aware of the publications or any of the facts regarding the Mint lease at the time of their employment.  Gary and others dispute that he has an ownership interest in the Long Island restaurant.  *See* Gary Dep. at 18-19 (he owned Mint NYC but not Mint Long Island); Goyal Dep. at 40-41 (regarding whether Gary was holding himself out as an owner "[h]e was never owner so if he was doing it, I have no idea."); Rubal Dep. at 247 (Gary is the former owner of Mint NYC, but he is not the owner of Mint on Long Island).

While there may appear to be a dispute regarding Gary's ownership interest, resolution of this issue is not dispositive of whether he was as an "employer" under the FLSA.  Even

24

assuming, *arguendo,* that Gary was an owner, Plaintiffs have not put forth evidence to show

"some degree of individual involvement in [Mint] in a manner that affects employment-related

factors such as workplace conditions and operations, personnel, or compensation." *Irizarry,* 722

F.3d at 109. Gary was physically present at Mint several times a week. *See* Gary Dep. at 8-9 (he

works part time at Mint, is in the lounge four or five days a week); Goyal Dep. at 27-28 (Gary

was there three or four times a week). He sat in the lounge and watched TV, and met with people

who came in to book parties. Gary Dep. at 17-18; *see also* Goyal Dep. at 27 (Gary books private

parties, catering events). He had no set schedule and was paid on a commission basis for the

party bookings. Gary Dep. at 14. None of this conduct impacted the employees, and Plaintiffs

do not claim any personal involvement in these activities. There is no evidence whatsoever that

Gary had hiring or firing authority, that he controlled workers' schedules, that he determined

rates of pay or methods of payments, or that he maintained employment records.

The lone evidence offered by Plaintiffs is their conclusory statements regarding Gary's

involvement in occasionally providing direction. In two identical affidavits, Plaintiffs state that

"Gary was at Mint nearly every day, overall supervising the restaurant and the other workers at

Mint, along with Rubal and Soni. Gary would direct me to clean and bring dishes. Gary held

himself out as one of the 'bosses' at Mint." Affidavit of Carlos Hernandez, ¶2, DE [32-13];

Affidavit of Enrique Maldonado, ¶2 DE [32-12]. Hernandez also testified that Gary "tells people

what to do" in the restaurant, Hernandez Dep. at 45, and that if Gary saw something dirty, "he'd

tell me you have to clean here, you have to clean there." *Id.* at 46. Hernandez later revised his

testimony, indicating that Gary never directly gave him instructions or communicated with him,

but rather would tell the chef and "the chef would be the one that would tell me or tell us in the

kitchen what to do." *Id.* at 48. Joyal disputes this account, testifying that Gary never instructed

him to tell other people what to do.  Joyal Dep. at 31-32.  Maldonado did not testify about any

supervisory conduct by Gary, but rather only that he knows him as "the father of Rubal."

Maldonado Dep. at 10-11.

Viewing it in the light most favorable to Plaintiffs, the evidence is insufficient to

establish that Gary was an employer.  "[T]he economic reality test turns on objective economic

realities, not subjective beliefs as to who constitutes an employer." *Garcia v. JonJon Deli*

*Grocery Corp.*, No. 13 CIV. 8835, 2015 WL 4940107, at \*3 (S.D.N.Y. Aug. 11, 2015).

Plaintiffs' subjective belief that Gary, the owner's father, had the authority to control their work

is insufficient to defeat the motion in the absence of any objective evidence of his supervisory

position.  *See Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016) (plaintiff's

"subjective beliefs, no matter how genuinely held, are simply of no consequence in assessing

[defendant's] status as an employer under the economic reality test").  The mere fact that

Plaintiffs thought Gary was a "boss," and that he occasionally gave employees directions is not

sufficient to support a finding that he was an employer under the economic realities test where he

did not "hold an integral role in [the corporation's] operations, or in setting work policies,

schedules or conditions of employment." *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291

(E.D.N.Y. 2002) (sole shareholder's father who also worked at company was not an employer

under FLSA), *aff'd as modified*, 66 F. App'x 261 (2d Cir. 2003).

Plaintiffs contend that Defendants' responses to their Requests for Admissions ("RFA"),

Monteiro Decl. Ex. 25, are binding on the issue of whether the individual defendants, particularly

Gary, are employers within the meaning of the FLSA.  For example, Defendants admit that

"throughout the tenure of his employment, [Hernandez] was a non-exempt employee of

Defendants within the meaning of the FLSA…"  RFA No. 23.  As the responses were

purportedly provided by "Defendants," defined as the Defendants at that time (Gary, Sanjay Goyal, Madhu Goyal, Mint, John Doe, and John Doe No. 2), Plaintiffs contend that every Defendant has admitted to being Hernandez's "employer."[8]   The request itself, however, is far from clear and is susceptible to multiple interpretations.  The word "employer" does not appear in the request and it is more simply read as a request for an admission that Hernandez was a non-exempt *employee*, and thus eligible for relief.  Given the inherent ambiguity in the request, the Court declines to use this "admission" to declare Defendant Gary to be an employer, especially in the absence of any other indicia of control exercised by him at Mint.

Plaintiffs have not offered evidence that a reasonable jury could rely upon to conclude that Gary acted as their employer.  Accordingly, Plaintiffs' motion for summary judgment is denied, Defendants' motion for summary judgment is granted, and the case is dismissed as against Gary Sikka.

## E.  Damages, Liquidated Damages, Attorneys' Fees and Costs

Plaintiffs seek an award of attorneys' fees and liquidated damages.  "Under both the FLSA and NYLL, plaintiffs are entitled to liquidated damages if they have been denied appropriate minimum wages or overtime." *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law §§ 198(1–a), 663(1)). An employer who violates the overtime wage provisions is liable for "the payment of wages lost and an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless it shows that it acted in "good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation" of the FLSA. 29 U.S.C. § 260.4.  To avoid an assessment of liquidated damages based on "good faith, the employer must take active steps to ascertain the

---

[8]Plaintiffs do not explain why they have agreed to dismiss Madhu Goyal since under their rationale, she too has admitted to being an employer under the FLSA.

dictates of the [labor laws] and then act to comply with them." *Herman,* 172 F.3d at. As the issues of liability and damages have not been fully adjudicated, Plaintiffs' motion for an award of liquidated damages and attorneys' fees is denied as premature.

While summary judgment has been granted in Plaintiffs' favor on several claims, others remain to be decided at trial. Determination of damages is deferred pending resolution of the remaining claims.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiffs' motion [33] is: (1) granted as to Hernandez's claims for unpaid wages, overtime, and spread of hours pay for the time periods from (a) July 1, 2012 through January 26, 2014; (b) June 30, 2014 through August 14, 2014; and (c) February 20, 2017 through March 16, 2017; (2) granted on Plaintiffs' wage notice and wage statement claims; (3) denied as to the remaining claims.

Defendants' motion [32] is granted in its entirety. The Clerk of the Court is directed to terminate Defendants Sanjay Goyal, Madhu Goyal, and Bhupinder Sikka as parties.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
        March 6, 2020